IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>MIGUEL BERROA DE LA CRUZ [1], *et al.*,<br><br>**Defendants.** | **Criminal No.** 20-024 (FAB) |

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Defendants Miguel Berroa-de la Cruz ("Berroa"), Livio Jiménez-Astacio ("Jiménez"), José M. Vicente-Ramírez ("Ramírez"), Ose Louis Baljon ("Baljon"), and Raúl López-Martínez ("Martínez") (collectively, "defendants") move to dismiss the indictment pursuant to the Due Process Clause and Federal Rule of Criminal Procedure 16. (Docket No. 76)  They also request an evidentiary hearing.  Id.  For the reasons set forth below, the defendants' motion to dismiss the indictment, and their request for an evidentiary hearing are **DENIED**.

---

[1] Sarah Roman, a second-year student at Northwestern University School of Law, assisted in the preparation of this Opinion and Order.

Criminal No. 20-024 (FAB)                                                   2

## I. Background[2]

On December 27, 2019, the Puerto Rico Police Department Maritime Unit ("FURA") attempted to interdict a vessel near Cabo Rojo, Puerto Rico. (Docket No. 1, Ex. 1 at p. 2) The occupants of this vessel performed "evasive maneuvers," "throwing burlap sacks overboard." Id. A collision allegedly "occurred between the vessel . . . and the PRPD maritime unit." (Docket No. 76 at p. 3) Subsequently, the vessel capsized. (Docket No. 1, Ex. 1 at p. 2) FURA officers recovered the defendants and 129 brick-shaped packages from the ocean. Id. at p. 3. The substance contained within these packages tested positive for cocaine. Id.

A grand jury returned an indictment charging the defendants with conspiracy to possess with intent to distribute cocaine (count one), possession with intent to distribute cocaine (count two), and destruction or removal of property to prevent search or seizure (count three), in violation of 21 U.S.C. sections 841(a)(1), (b)(1)(A)(ii) and 846, 21 U.S.C. sections 841(a)(1) and (b)(1)(A)(ii), and 18 U.S.C. section 2332(a), respectively. (Docket No. 23)

---

[2] Drug Enforcement Administration ("DEA") special agent Noel García submitted an affidavit in support of the criminal complaint. (Docket No. 1, Ex. 1) The following allegations are based on his affidavit.

Criminal No. 20-024 (FAB)                                                                3

On January 28, 2020, Berroa moved to preserve "the vessel and any other physical evidence." (Docket No. 37 at p. 2) The United States responded that it "[would] maintain and preserve these items for future inspection and availability at trial." (Docket No. 45 at p. 1) At a February 7, 2020 status conference, the United States also articulated its "[intention] to bring the boat for trial." (Docket No. 44) The vessel was, however, destroyed by the United States Coast Guard ("USCG"). (Docket No. 76 at p. 3) The defendants now move to dismiss the indictment, asserting that the "[i]ntentional destruction of the yola-style vessel and other evidence is part and parcel of [a] pattern of obfuscation." (Docket No. 76 at p. 4) The Court disagrees.

**II. Spoliation**

Criminal defendants possess a "due process right to review all evidence in the government's possession that is material to [their] guilt or punishment." Mcgraw v. Roden, 743 F.3d 1, 7 (1st Cir. 2014) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). The Constitution does not, however, impose on the United States an "absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (citation omitted); see also United States v. Garza, 435 F.3d 73, 74 (1st Cir. 2006) (holding that the "state's destruction of the

Criminal No. 20-024 (FAB)                                                         4

drugs and tape recordings which were evidence of the drug deals" did not violate the Due Process Clause).

The standards set forth in California v. Trombetta, 467 U.S. 479 (1984), and Youngblood, 488 U.S. at 51, control the Court's analysis. See United States v. Femia, 9 F.3d 990, 993 (1st Cir. 1993) ("Brady and its progeny address exculpatory evidence still in the government's possession. Youngblood and Trombetta govern cases in which the government no longer possesses the disputed evidence."). Materiality is central to the Trombetta-Youngblood inquiry: "(1) the destruction of 'apparently exculpatory' evidence does not require a showing of bad faith but (2) if the evidence is only 'potentially useful,' a bad-faith showing is required." Olszewski v. Spencer, 466 F.3d 47, 56-57 (1st Cir. 2006). The defendants must also demonstrate that the destroyed evidence "is to some extent irreplaceable." United States v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000); Olszewski, 466 F.3d at 58 (holding that "proof of irreplaceability is required in both apparent and potential exculpatory evidence cases").

**A. Exculpatory Value of the Vessel**

Generally, the destruction of evidence compels the Court to "[divine] the import of materials whose contents are unknown." Trombetta, 467 U.S. at 486. The Court need not rely on surmise, however, because the insignificance of the vessel is evident. The

defendants contend that "there were no drugs on the vessel," asserting that the cocaine recovered from the ocean "did not belong to [their] boat." (Docket No. 76 at p. 7) They attribute the cocaine to a second vessel, a larger boat discovered by law enforcement officers near "the shore of Punta Guaniquilla" on the "exact same morning" as the interdiction. Id. By destroying the vessel, the United States purportedly deprived the defendants of the ability to "[test] for the absence of cocaine," to "inspect the yola for evidence of" a collision, and to "analyze the performance of the outboard engine." Id. The defendants intend to question "the notion [that] the 20-footlong vessel with a single 60 horsepower engine, could fit and comfortably carry 5 grown men and nearly 400 pounds of cocaine across the Mona passage." Id.

The Court cannot discern how the vessel is exculpatory. FURA officers recovered cocaine from the ocean after observing the defendants throw this evidence overboard. (Docket No. 1, Ex. 1) The United States declined to test the vessel for the presence of controlled substances. (Docket No. 76 at p. 4) Furthermore, no allegation indicates that the vessel contained trace amounts of cocaine or that FURA officers recovered illicit narcotics from the yola. Essentially, the defendants seek to prove an uncontested fact: there was no cocaine on the vessel. They may asseverate that the United States conducted a haphazard investigation, but

this is fodder for argument or cross-examination rather than grounds for dismissal of the indictment. See, e.g., United States v. Prejean, 429 F. Supp. 2d 782, 796 (E.D. La. 2006) (denying motion to suppress destroyed evidence, noting that the "[d]efendants shall have the opportunity at trial to present evidence that the records at issue were damaged and destroyed by Hurricane Katrina, and can make challenges to the incompleteness of the government's evidence in this regard."); Dugas v. Coplan, 428 F.3d 317, 331 (1st Cir. 2005) (noting that "the state's evidence may be so weak that it can be demolished on cross-examination") (internal citation and quotation marks omitted).

The evidence at issue in Youngblood is an apt comparison. 488 U.S. 51. The defendant allegedly abducted and sexually molested a young boy. Id. Subsequently, law enforcement officers failed to preserve semen samples from the boy's clothing. Id. The defendant raised a Due Process challenge, arguing that the samples "could have produced results that might have completely exonerated" the defendant. Id. at 55. The Supreme Court rejected this argument, instead holding that the samples were "potentially useful" evidence that "could have been subjected to tests" but for the negligence of law enforcement officers. Id. at 57-58.

Like the law enforcement officers in Youngblood, Coast Guard personnel in this case destroyed evidence that deprived the

Criminal No. 20-024 (FAB)                                                          7

defense of an opportunity to test the vessel. But unlike the theoretical DNA test in Youngblood (whose results could have potentially exonerated the defendant),[3] the distinction between a negative test and no test at all is negligible. The dichotomy in this case is incrimination or corroboration, neither of which establish the apparent exculpatory value of the vessel. No party in this case disputes that the vessel belongs to the defendants or that they were at sea on the day of the interdiction. Test results proving that the vessel contained cocaine would incriminate the defendants. A negative test would merely corroborate the defendant's theory that they are "immigrants seeking a better life," and not drug traffickers. Docket No. 76 at p. 1; See Magraw v. Roden, 743 F.3d 1, 8 (1st Cir. 2014) (holding that evidence that could have been subjected to tests, the results of which might have, but not certainly, exonerated the defendant is not materially exculpatory) (internal quotation marks omitted). This defense is consistent with the discovery provided by the United States. Accordingly, the materiality of the vessel is tenuous. Stickler v. Greene, 527 U.S. 263, 280 (1999) (holding that "evidence is material if there is a reasonable probability that, had the

---

[3] Indeed, 15 years after the Supreme Court decided Youngblood, technological advances permitted the DNA testing of which the Youngblood defendant had been deprived, and he was exonerated. https://innocenceproject.org/cases/larry-youngblood/ (last visited Aug. 24, 2021).

Criminal No. 20-024 (FAB)                                                8

evidence been disclosed to the defense, the result of the proceeding would have been different").

A generous review of the record suggests that, at most, the vessel had potential exculpatory value. See, e.g., United States v. García-Solar, 775 F. App'x 523, 531 (11th Cir. 2019) ("As to the boat itself, the fuel canisters, the motors, the knife and other items that sunk with the boat, nothing about them was clearly exculpatory at the time the Coast Guard sunk them . . . Rather, the defendants have only shown that they could have examined the evidence and possibly used it in their defense."); United States v. Van Bommel-Duyzings, Case No. 09-226, 2009 U.S. Dist. 125400, at *11-12 (holding that the "defendants have totally failed to show that the exculpatory value of the evidence was apparent before the destruction of the same," because they "only made, through counsel, naked claims of being unable to independently examine the vessel to determine whether it was registered or stateless and to take samples to defend the allegation that sections of the boat tested positive to the presence of cocaine") (Domínguez, J.).

   B.   **Bad Faith**

Because the vessel is only potentially useful, the defendants must establish that the United States destroyed this evidence in bad faith. See United States v. Bresil, 767 F.3d 124,

Criminal No. 20-024 (FAB)                                                9

129 (1st Cir. 2014) (holding that because the destroyed "boat was no more than potentially exculpatory evidence, [defendant] is only entitled to a new trial if he can show that the government acted in bad faith by destroying the boat") (internal quotation marks omitted).  This element is satisfied, the defendants argue, because the United States "had explicit notice (on multiple occasions) that Mr. Berroa believed the vessel, tarp, and gasoline cannisters exculpatory." (Docket No. 76 at p. 10)  Requesting that the United States preserve evidence is not, however, dispositive of bad faith. See Illinois v. Fisher, 540 U.S. 544, 548 (2004) ("We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police.")(*per curiam*).  The defendants must set forth "independent evidence that the [United States] was somehow improperly motivated."  Garza, 25 F.3d at 75 (1st Cir. 2006); see United States v. Jobson, 102 F.3d 214 (6th Cir. 1996) ("To establish bad faith, then, a defendant must prove official animus or a conscious effort to suppress [potentially] exculpatory evidence.") (internal quotation marks omitted) (citing Trombetta, 467 U.S. at 488).

The United States alleges that it destroyed the vessel in accordance with 19 U.S.C. section 1612 ("section 1612"), negating the bad faith element.  (Docket No. 87)  Courts have "held that destruction of evidence in accordance with an established

Criminal No. 20-024 (FAB)                                         10

procedure precludes a finding of bad faith absent other compelling evidence." United States v. Figueroa-Quiñones, 21 F. Supp. 3d 138 (D.P.R. 2014) (Besosa, J.) (quotation omitted); Garza, 435 F.3d at 73 (holding that the evidence destroyed when implementing routine procedures militates against a finding of bad faith).

Pursuant to section 1612, "[i]f the Customs Service determines that the expense of keeping the vessel . . . is disproportionate to the value thereof, the Customs Service may promptly order the destruction or other appropriate disposition." 19 U.S.C. § 1612(b). "The agency seizing the property must give notice of the seizure to all parties in interest and must inform them of the applicable procedures for contesting the proposed forfeiture." Gines-Pérez v. Kelly, 333 F.3d 313, 314 (1st Cir. 2003) (citing 19 U.S.C. § 1612). The United States purportedly provided no notice, destroying the vessel in contravention of section 1612. The record suggests that the Assistant United States Attorney failed to instruct the USCG to preserve the vessel, despite having represented to the Court and defense counsel that the vessel would be available for inspection. While this suggests negligence on the part of the Assistant United States Attorney, there is no evidence or colorable allegation that the United States or the USCG destroyed the vessel in a calculated attempt to incriminate the defendants, or to prevent a drug analysis.

Criminal No. 20-024 (FAB)                                                11

Negligence and lack of communication between executive agencies do not constitute bad faith.  See Femia at 996 n.8 (holding that tapes destroyed outside the standard procedure was negligent, but did not qualify as bad faith); United States v. Thompson, 584 Fed. Appx. 101, 104 (4th Cir. Oct. 1, 2014) (holding that a police department's "failure to re-label [officer] footage when [the defendant's] charge was upgraded to a felony – so that the footage would be preserved beyond sixty days – could at worst be described as negligent."); Garza, at 75 (holding that "intentionality is not enough to show bad faith"); Figueroa-Quiñones, 21 F. Supp. 3d at 142 (holding that "an agency's failure to comply with standard procedure could provide some evidence of bad faith, [but] courts have not held that an improper procedure in and of itself implies bad faith") (citation omitted); United States v. Daniels, Case No. 18-063, 2019 U.S. LEXIS 219162 at, *10 (D. Me. Dec. 20, 2019) ("To the extent that the Defendants have documented irregularities in the inventory process and the apparent same-day destruction of the seized marijuana, these irregularities 'can at worst be described as negligent.'") (citing Youngblood, 488 U.S. at 58); Jobson, 102 F.3d at 214 (holding that the States' destruction of recordings that the defendant requested to be preserved did not violate due process, despite the United States' gross negligence in failing to preserve); United States v.

Sandoval, 913 F. Supp. 494 (S.D. Tex. 1995) (denying motion to dismiss the indictment because the destruction of controlled substances following defendant's motion to preserve was negligent). Accordingly, the defendants have failed to demonstrate that the United States acted in bad faith by destroying the vessel.

### C.  Irreplaceability

According to the defendants, "there is no way to show cocaine residue or particles were not located on a vessel," or "to determine the extent and location of the damage to the yola and engine without inspecting them." (Docket No. 76 at p. 9) Evidence is irreplaceable if the defense is "without alternate means of demonstrating their innocence." Olszewski, 466 F.3d at 57 (quoting Trombetta, 467 U.S. at 490). The United States produced "photographs of the vessel and [the] defendants' wet clothing." (Docket No. 87 at p. 6) These photos "show the vessel from different angles and depicts the engine's make and horsepower." Id. Furthermore, the defendants may cross-examine the arresting officers regarding the absence of cocaine on the vessel. See Trombetta, 467 U.S. at 490 (rejecting the proposition that the United States destroyed irreplaceable evidence because the defendant "retain[ed] the right to cross-examine the law enforcement officer who administered the Intoxilyer test, and to

Criminal No. 20-024 (FAB)                                                    13

attempt to raise doubts in the mind of the factfinder whether the test was properly administered"). They may also testify at trial. See United States v. Esquilín-Montañez, 268 F. Supp. 3d 314, 317 (D.P.R. 2017) (Pérez-Giménez, J.) (holding that the defendant's testimony may serve as comparable evidence and should not be disregarded lightly) (quoting Owens v. United States, 483 F.3d 48, 59 (1st Cir. 2007)). Consequently, the defendant's motion to dismiss the indictment pursuant to the Due Process Clause is **DENIED**.

**III. Federal Rule of Criminal Procedure 16**

The defendants maintain that the United States violated Federal Rule of Criminal Procedure 16. (Docket No. 76 at p. 12) They rely exclusively on United States v. Zaragoza-Moreira, 780 F.3d 971 (9th Cir. 2015), for the proposition that the United States "likely runs afoul of its discovery disclosure requirements under Fed. R. Crim. 16" when it "fails to comply with preservation requests and allows evidence to be destroyed." Generalizations from the Ninth Circuit Court of Appeals are an insufficient basis for imposing Rule 16 sanctions. Consequently, the defendants' motion to dismiss the indictment pursuant to Rule 16 is **DENIED**.

**IV. The Evidentiary Hearing**

The defendants request an evidentiary hearing because "a multitude of factual issues remain unclear." (Docket No. 76 at

Criminal No. 20-024 (FAB)                                               14

p. 12)  Criminal defendants "have no presumptive right to an evidentiary hearing."  United States v. Cintrón, 724 F.3d 32, 36 (1st Cir. 2013).  "[T]he decision of whether to conduct an evidentiary hearing [on a motion to suppress] is left to the sound discretion of the district court."  United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010).  To obtain an evidentiary hearing, the proponent shoulders the burden of "'mak[ing] a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.'"  Cintrón, 724 F.3d at 36 (quoting United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013)).

The defendants' request attempts to accomplish what their motion fails to do: demonstrate that the United States acted in bad faith.  The pertinent facts are not in dispute: the defendant's vessel capsized, FURA officers declined to test the vessel for the presence of cocaine, the Assistant United States Attorney agreed to preserve the vessel, but the USCG subsequently destroyed this evidence.  They intend to ask putative witnesses:

>       What steps were taken by the government to 'maintain and preserve' the evidence after Mr. Berroa's initial requests?  When exactly did the government destroy the evidence?  How did it destroy the evidence?  What was the case agent's role in the destruction of the evidence?  Why was the defense not immediately informed?

(Docket No. 76 at pp. 12-13)  The minutiae of how the USCG disposed of the vessel is irrelevant.  The Court will not entertain a fishing expedition.  Accordingly, the motion for an evidentiary hearing is **DENIED**.

### V.  Conclusion

For the reasons set forth above, the defendants' motion to dismiss the indictment, and their request for an evidentiary hearing are **DENIED**. (Docket No. 76)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 24, 2021.

                                          s/ Francisco A. Besosa
                                          FRANCISCO A. BESOSA
                                          UNITED STATES DISTRICT JUDGE